Mr. Justice Cox
delivered the opinion of the Court:
This case presents quite a complicated record, and it was argued with great ability and with a great display of learning, principally on questions of a technical character. ' It would be impossible within any reasonable space of time to review the vast number of authorities that have been cited, and we shall only state .some general conclusions.
*264 The suit was brought on the 13th of June, 1883. The original declaration contains three counts: in the first one the plaintiff sets forth, in substance, that prior to the 22d of January, 1881, at the special instance and request of the defendant, the plaintiff loaned him fourteen 7 per cent, permanent improvement bonds of 1he District of Columbia, of the denomination and par value of $1,000 each, and that the defendant afterwards executed his receipt bearing date the 22d day of January, 1881, whereby he certified that he had received from the plaintiff, as a matter of accommodation to him, the said defendant, fourteen one thousand dollar, District of Columbia 7 per cent, permanent bonds, and that the defendant held himself personally responsible to the plaintiff for the safe return of the bonds; then it goes on to aver that, although the plaintiff has frequently, since the 22d of January, requested and- demanded of the said defendant, the return to him of the said bonds, he has failed and refused to make the return and still fails and refuses; but on the contrary has sold the same and converted the money to his own use. And the plaintiff avers that the said bonds, at the time of the sale and conversion thereof, by the defendant, were worth 21 per cent, premium, and that said bonds were and are worth the sum of $16,940.
The second count was simply a special count on a small note of $277.50, which, as subsequently appears, was for the amount of the unpaid interest on the same bonds that had accrued up to the first of January, 1881.
The third count contains the consolidated common counts for goods sold and delivered, for work done and material provided, and the money counts. The claim with which the declaration winds up is:
“And the plaintiff claims $17,217.50 with interest thereon at the rate of 6 per cent, per annum from the first day of January, 1881, until paid, according to the particulars of demand herewith filed, besides costs.”
The particulars of demand are:
*265 “For one note described in the foregoing declaration, $277.50.
“ For fourteen 7 per cent, permanent improvement bonds of the District of Columbia of the denomination of $1,000 each, of value of $1,200 each, $16,940.
“Interest on the aggregate from th'e first day of January, 1881, until paid, at 6 per cent, per annum.”
In September, 1883, the defendant filed several pleas: first, that he never was indebted as alleged; second, that the bonds were not the property of the plaintiff and that the plaintiff had fraudulently obtained possession of them; and, third, that the bonds belonged to a-certain Patrick Cullinan, who had already given notice to the defendant of his claim, since this suit, and had demanded the return of the bonds; and that this fact was fraudulently concealed from him by the plaintiff.
In May, 1885, the defendant moved for leave to withdraw his pleas and demur to the declaration because of the misjoinder of counts, upon the ground that the first count is one in trover and the others in assumpsit, and the minutes of the Court show-that with the leave of the Court the plaintiff withdrew his first count.
This leaves in the declaration nothing but the special count on the small note and the common counts before referred to. On the 10th of December, of the same year, the plaintiff filed an amendment to his declaration in which he sets forth, as a substitute for the first count, the same facts that were before set out; but instead of claiming the value of the bonds alleged to have been converted he says: “That the said defendant did not return said bonds to him, or any of them, although often requested so to do; but, to wit, the day and year last aforesaid sold the same and received therefor a large sum of money, to wit, the sum of $15,645, by reason whereof an action hath accrued to the plaintiff to have and demand of the defendant the said sum of $15,645, money had and received by the said defendant for the use *266 of the plaintiff, with interest thereon from the 22d day of January, 1881.
He claims, in this count, not damages in the shape of the value of the bonds converted, but the actual amount received, as money had and received. I may as well say here, to avoid any further trouble with this count, that this was held to be bad in the Court below, because it amounted to the same thing as the common counts for money had and received. It, therefore, also disappears from the declaration.
The second amendment is a description of the small note and the third consisted of additional and other particulars of demand.
As I have already stated the particulars of demand filed in the first instance were fourteen 7 per cent, permanent improvement bonds of the District of Columbia; and in this amendment the particulars are “Cash received, by the said Taylor for the use of the plaintiff, $15,645.” This is stated in a half dozen different forms, to meet the exigencies of the proof.
When these amendments were filed, the defendant filed a plea that the cause of action did not accrue within three years before the amended declaration This proceeded upon the ground that the original declaration did not embrace the cause of action which was exhibited in this amendment; that the amendment, for the first time, set it forth, and was equivalent to bringing a new suit and therefore the defendant had the right to plead that the cause of action did not accrue within three years before the filing of the amendment. This was held bad on demurrer, and then the usual plea of the statute was filed.
The result then of these various rulings on different motions and demurrers, which it is not worth while to give more in detail, was, that the pleadings consisted of a count on the small note, and the common counts; and, on the part of the defendant, of the general issue, and the *267 plea that the cause of action did not accrue within three years before the commencement of the suit.
Then there were four replications to this plea of the Statute of Limitations. The first replication is in the usual form, that the said cause of action did accrue within three years prior to the institution of this ¡ suit. The second was that there was a fraudulent concealment of the cause of action from the plaintiff, which was not discovered until within three years before the commencement of this suit. The third was an acknowledgment of the liability within three years prior to the commencement of the suit and a promise to pay the same; and the fourth was an acknowledgment by the defendant that he had sold the bonds and received the proceeds of the sale thereof and promised to pay the same. The third and fourth are substantially the same.
The defendant thereupon moved the Court to compel the plaintiff to elect upon which of these replications he would rely. The motion was overruled. Thereupon, the defendant demurred to the replications, for duplicity, because the Court allowed four replications to one plea. That demurrer was overruled, and thereupon the defendant demurred separately to each of the second, third and fourth replications. These demurers being overruled issue was joined upon replications.
When the jury was sworn, there was a motion to strike from the bill of particulars the second item, and then a motion to withdraw the rejoinders of the defendant to the plaintiff’s second, third and fourth replications to the defendant’s plea of the Statute of Limitations and that the plaintiff be compelled to elect upon which one of his replications he would stand. That motion was overruled.
The cáse then went on for trial and the final instructions given by the Court were:
1. If the jury believe from the evidence that the defendant received from the plaintiff fourteen bonds commonly *268 called 7 per cent, permanent improvement bonds of the District of Columbia, such as are described in the particulars of demand filed with plaintiff’s declaration, under an agreement to return the same, and has not returned them, and sold them without the knowledge or consent of plaintiff, and fraudulently concealed the fact of such sale from him until within three years prior to the institution of this suit, and that the plaintiff could not, by the use of ordinary diligence, have discovered such sale until -within three years prior to the institution of this suit, then the plaintiff is entitled to recover in this action the sum which the evidence shows the defendant received therefor, with interest thereon from the 22d day of January, 1881.
2. And if the jury believe from the evidence that the note for $277.50 given in evidence, was given for the balance of interest coupons received by the defendant, on the bonds mentioned in this cause up to and including the first of January, 1881, then the plaintiff is also entitled to recover the amount of said note, with interest thereon from the first day of January, 1881.
3. If the jury believe from the evidence that the receipt given in evidence, purporting to have been signed by the defendant, bearing date the 22d day of January, 1881, and the writing addressed to Higgs & Co., purporting to have been signed by the defendant, and the receipt purporting to have been signed by the plaintiff, bearing date the same day, and the two notes purporting to bear date on the first of January, 1881, for $7,000 each, and the note for $277.50, purporting to bear date on the first day of January, 1881, were signed by the defendant and the plaintiff respectively and were all executed at the same time, and as a part of the same transaction, and related to the bonds in controversy in this suit, then the execution and reception by the respective parties was such a recognition, by the defendant, of his liability as would preclude him from maintaining in *269 this action his plea of the Statute of Limitations to the plaintiff’s demand in this action.
I should observe here that the cause of action arising from the sale would accrue about the 23d of January, 1880, and suit was not brought until 1883. The answer to the Statute of Limitations was that in 1881 there was a new promise which revived the liability, and also that there was a fraudulent concealment which was not discovered Until July, 1881, both of which periods would be within three years before the suit was brought.
Then the defendant prayed the Court to instruct the jury that if they find, from the evidence in the case, that the defendant by virtue of the contract of January 22,1881, had the right to elect, either to return the bonds claimed, or to retain them, and that he did elect to retain the bonds, then the plaintiff cannot recover in this action.
There was also an offer by the defendant to prove that the bonds did not really belong to the plaintiff, but belonged to certain other parties, and that therefore the plaintiff was not entitled to recover.
The errors assigned, which indicate the questions made in the course of the trial, were: first, allowing the plaintiff to change his cause of action from, trover to assumpsit, as it is called; second, allowing a new cause of action to be introduced by the change from trover to' assumpsit after the Statute of Limitations had run against it; third, the sustaining of the demurrer to the plea of the Statute of Limitations to the amended declaration; and fourth, the refusal of the Court to nonsuit the plaintiff, on the ground that the papers showed a mere alternate or optional contract to return or pay the value of the bonds, and that the plaintiff in that case could not recover on the common counts; and lastly, the refusal of the Court to allow the deféndant to show that the plaintiff was not the owner of the bonds.
This leads us to inquire — What, from the conceded evidence in the case, was really the cause of action? and, When *270 did it accrue with reference to the commencement of the suit ? and then, Did the original declaration, so far as it remains unchanged by the amendments, contain apt words and averments to embrace the real cause of action, or does that only appear in the amended declaration?
The transaction is found in certain written instruments which are undisputed as to their genuineness and will be easily understood, commencing on page 24 of the record. The first is a receipt dated October 2, 1877, as follows:
“Received from W. B. Moses, $10,000 in the 7 per cent, general improvement bonds of the District of Columbia, which I am to return upon call.
“ (Signed) George ' Taylor.”
The next is a receipt dated October 25, as follows:
“Received from W. B. Moses, two bonds of $1,000, known as the 8 per cent, improvement bonds of the District of Columbia, to be returned on call.
“ (Signed) George Taylor.”
The third is a receipt dated Decembér 29,1877, as follows:
“Received from W. B. Moses, two District Columbia bonds, 7 per cent, improvement, of $1,000 each, to be returned on call.
“ (Signed) George Taylor.”
The first receipt, it will be observed; is dated October 2, 1877, and thirty-nine months afterwards, that is, on the 22d of January, 1881, there appears another:
“Washington, D. C., Jan. 22, 1881.
“This is to certify that I have received from W. B. Moses, Esq., as a matter of accommodation to me, fourteen one thousand dollar D. C. 7 per cent. int. permanent improvement bonds, and that the said bonds are now on deposit in my name with Riggs & Co., bankers, of this city; and I *271 hereby hold myself personally responsible to the said W. B. Moses, his heirs or assigns, for the safe return of said bonds, originally receipted for; this being only a duplicate for the same bonds.
“(Signed) George Taylor.”
On that same day the defendant executed two promissory notes, which were dated, however, on the first of the month, one being a promise to pay $277.50, one month after date, and two notes for the sum of $7,000 payable four months after date, with interest at the rate of 7 per cent, per annum.
The plaintiff on the 22d of January, 1881, executed the following paper:
“Washington, D. 0., Jan. 22, 1881.
“Received of George Taylor, Esq., his two notes Jan’y 1, 1881, each at four months from date and for the sum of $7,000, payable at Bank of Washington with interest at 7 per cent, per annum until paid — same being as collateral security for my fourteen one thousand dollar D. O. 7 percent. int. permanent improvement bonds, same being held by him as a loan for his accommodation, and now on deposit in Messrs. Riggs & Co.’s Bank.
“ It is understood that these notes are to cover but the face amount of said bonds, and their interest, any and all premiums above par on said bonds being due to me, and to be- accounted for to me, if the bonds as stated are not returned to me.
“(Signed) , W. B. Moses.”
There is still another paper to which I will refer, dated January 22, 1881, viz.:
“Washington, D. C., Jan. 22, 1881.
“Messrs. Riggs & Co., Bankers:
“Gents: I hereby authorize you to accept from W. B. Moses at any time he may call,-from 'and after this date, the .sum of $14,000, and deliver to him in return the four *272 teen one thousand dollar 7 per cent, int. D. C. improvement bonds, now on deposit in your bank in my name. If living, this order — it is understood if I am living — is to be presented through myself.
“ (Signed) Geo. Taylor.”
This was the transaction as shown on the papers. There was also some correspondence between the parties. At the trial the evidence on the part of the plaintiff tended to show, without contradiction, that in January, 1880, a year before these papers were executed, the defendant having previously obtained money upon the pledge of these bonds, partly with Riggs & Co., and partly with the National Metropolitan Bank, sold all of the bonds and paid off the loans due upon them and received the balance, which was $1,446.48.
The first question made in the argument may be said to be whether this was an agreement to return the identical bonds or simply an agreement to return an equivalént amount in similar bonds. It was argued that this transaction was in the nature of what the civil law calls a mutuum, when one party borrows securities and has to return similar securities, but not the identical ones; a transaction somewhat common among stock brokers.
This idea, however, seems to be inconsistent with the language of the receipt of January 22, 1881, which says:
“ This is to certify that I have received from W. B. Moses, Esq., as a matter of accommodation to me, fourteen one thousand dollar D. 0. 7 per cent. int. permanent improvement bonds, and that the said bonds are now on deposit in my name, with Riggs & Co., bankers, of this city; and I hereby hold myself personally responsible to the said W. B. Moses, his heirs or assigns, for the safe return of said bonds, originally receipted for; this being only a duplicate for the same bonds.
“ (Signed) Geo. Taylor.”
*273 It, therefore, appears clearly that the obligation was ot return these identical bonds, and not an equivalent amount in similar bonds.
It is further contended, however, that the obligation to return was not an absolute one but that it was optional with the defendant either to return the bonds or pay their value. Every delivery of personal property is either by way of bailment, sale or gift. It may be a bailment convertible into .a sale. That is, I may deliver or loan securities to a person, with the understanding that, at his option, he may choose to appropriate them to his own use and pay the value, which would be to convert the bailment into a sale. That is substantially what is contended here, viz.; that this was a bailment convertible into a sale at the election of the defendant.
The only language which seems to be relied upon in this regard is found in the receipt executed by the plaintiff himself, in which it is stated: “ It is understood that these notes are to cover but the face amount of said bonds and their interest; any and all premiums above par on said bonds being due to me and to be accounted for to me, if the bonds as stated are not returned to me.”
This is supposed to convey the idea that the defendant may elect not to return the bonds. But it must be remembered that in the first part of the receipt these two $7,000 notes are described as collateral security for his bonds, which are held as a loan for his, the defendant’s, accommodation. The notes were therefore given as collateral security, and collateral security always implies an original obligation. The original obligation here described is that found in the receipt executed by the defendant, in which he expressly agrees to return the bonds.
But, lest it might be supposed that the payment of the two $7,000 notes would be a discharge of the obligation, and in order to avoid that inference, it is added to this receipt that these two notes are intended to cover only the face 'of the bonds, and that if the defendant fails to perform *274 his contract for the return of the bonds he is not to be discharged but is held accountable for the premiums also. . It, therefore, seems to us that this is not in the nature of an optional agreement.
But, suppose it to be. Suppose the view taken by the defendant is correct. It then becomes important to ascertain, with reference to the pleadings, whether the defense of the Statute of Limitations is available, If this was' a bailment convertible into a sale, at the election of the defendant, then of course that election could not have been exercised before the date of the agreement itself, which was January 22, 1881. It cannot go further back than that, and that would be the earliest date to which the sale can be attributed, by the election of the defendant to take the bonds. That would be within three years of the bringing of the suit, and then the question would arise whether the declaration as originally filed contained apt averments to embrace that case.
In Archbold’s Nici Prius, p. 155 (231), we find the law stated thus:
“A contract which in the first instance was not a sale, but might become so upon the happening of a particular event, may, on the happening of that event, be declared upon as such, and the price be recovered in an action for goods sold and delivered; as, for instance, where the plaintiff lent the defendant a musical snuff-box, upon the condition that he was to have it and pay £3 10s for it, if it were damaged, and it being afterwards damaged, the plaintiff sued for the price in an action for goods sold and delivered; the Court held that the action lay; it was in fact a sale upon condition, and the condition happening the sale became absolute. Bianchi vs. Nash, 1 Mees. & W., 545. So, where the plaintiff sent goods to the defendant on sale or return, who kept them two years without returning or rendering any account of them Lord Kenyon, C. J., held that as more than a reasonable time had elapsed, the plaintiff might treat it *275 as a sale and delivery and maintain an action for the value of the goods, as for goods sold and delivered. Bayley vs. Gouldsmith, Peake, 56.”
In this case, as I say, if the election was exercised under this contract which made it a sale, it could not go back further than the 22d of January, 1881. The action was brought in June, 1883, and the original declaration contains a count for goods sold and delivered by the plaintiff to the defendant; and that count would cover the case of the sale of these securities as goods sold and delivered. And the particulars of demand filed at that time would cover the identical case, because as appropriate to the count for goods sold and delivered, we find in the particulars of demand, fourteen one thousand dollar bonds of the District of Columbia, of the value of so much money; so that, if the view taken by defendant is correct, that this is an optional agreement, under which he may elect to take the bonds, the case of the plaintiff is properly described in the declaration and particulars of demand, and all questions about the Statute of Limitations would thereby be avoided.
But, as I have stated before, we have taken a different view of the meaning of this contract, and have treated it as an absolute obligation to return -these bonds. If this had been an action of trover alone, the plaintiff would have made out a complete case of conversion by simply producing the defendant’s receipt of January 22,1881, acknowledging his possession of and accountability for these bonds, and by showing the subsequent demand and refusal in July, 1881. That would have shown a conversion as of the date of July, 1881, which was within three years before the beginning of the suit. The same thing would apply if this had been an action on the special contract contained in that receipt. But it is an action of assumpsit for money had and received, upon the assumpsit which the law implies from the sale of the bonds and the receipt of the proceeds. The party injured had the right to waive the tort, *276 ratify the sale, and sue in assumpsit. It, therefore, became incumbent upon the plaintiff, in order to sustain this action, to show that the bonds were not only converted by the defendant, but were sold by him; and in proving that he had to prove that the bonds had been sold in January, 1880, a year before the date of this receipt, and consequently more than three years before the beginning of this suit, although the original declaration did not develop that fact.
That obviously opened the way to the defendant to plead the Statute of Limitations. The answer of the plaintiff to this plea is that the conversion of the bonds in January, 1880, had been fraudulently concealed from him; and the fact was not disclosed to him until July, 1881, when he went to the bank of Riggs & Co., with the receipt that I have read, authorizing him to take up the bonds by paying the amount of the loan, and he then discovered that they had been sold. The plaintiff maintains that the Statute of Limitations only runs from the time of the discovery of the thing which was fraudulently concealed. He further says that the receipt of January, 1881, was an acknowledgment of the liability which revived it within three years before the suit was brought.
In answer to that, again, the defendant says that the original declaration did not describe this cause of action, and that it is only developed in the amendment to the declaration, which was not filed until December, 1885, more than four years after the alleged new promise, and the alleged discovery of the fraudulent concealment.
It, therefore, becomes important to ascertain what were the effects of the amendments allowed by the Court. In the first place, the Court allowed the plaintiff to withdraw his original count, which seemed to be a count in trover. Quite a number of authorities have been cited to show that the Court has no right to allow a plaintiff to convert an action of trover into an action of assumpsit. If this had been exclusively an action of trover, the authorities would apply; *277 but it was apparently an action of a double aspect. It was alleged to be both trover and assumpsit; and all that the Court did was to strike out the feature that seemed to make it ah action of tort and allow it to remain an action of assumpsit. We have seen no authorities that forbid the Court from doing that. So far we see no error-in the rulings of the Court as to the amendments.
■ But it is claimed that the further particulars of demand filed in December, 1885, which particulars consist of a claim for the amount received from a sale of the bonds, instead of a claim for the value of the bonds, show a new cause of action. There is no rule of common law, nor were there any rules of this Court, which compelled a plaintiff to file any bill of particulars with his declaration. But it was always the privilege of the defendant to compel the plaintiff to reduce the generality of his common counts to certainty by filing a bill of particulars; and when it was filed, under any count, it became, by relation back, a part of the original declaration. If the plaintiff filed a bill of particulars suitable only for one count and went to trial upon that, he was confined, in his evidence, to that bill of particulars; but if he had filed a bill of particulars under one count, there was no rule which prevented him from afterward filing particulars under any and all his other counts.
In this case it appears that the plaintiff had originally filed, particulars of demand which were appropriate only under the counts for goods sold and delivered. Before the trial, he takes leave to amend and files particulars of demand, which are appropriate also tó tfie count for money had and received. He might just as well have gone further and obtained leave to file particulars of demand under the count for money lent, and these two |7,0Q0 notes would have been evidence under that count.
The argument seems to be that although the declaration stood with the common counts and was in form assumpsit, yet because this bill of particulars claimed the value of the *278 bonds, in contemplation of law it was an action in trover. But this is a non sequitur. This bill of particulars, that was filed with the declaration, either was or was. not intended as a bill of particulars under the count for money had and received. If it was not intended as such, it was good under the count for goods sold and delivered, and it was open to the plaintiff at any time to file particulars of demand under the count for money had and received. If this was intended as a bill of particulars under the count for money had and received, it was erroneously stated, but that is all. It did not make the declaration one in trover.
Supjjose the declaration, instead of having the common counts, had specifically stated the conversion of these bonds, and then instead of claiming damages in the shape of the value of the bonds had expressly counted upon a promise and undertaking by the defendant, to pay the value of the bonds. That would be clearly an action of assumpsit; but if at the trial it appeared that the plaintiff relied upon the promise implied by law, he would, perhaps, have to amend his declaration and reduce his claim from the value to the actual amount received. All that the Court did under the circumstances of the present case amounts to allowing the plaintiff to amend a defective count, for money had and received, by • correcting his bill of particulars. We see no objection in the world to the exercise of that power by the Court.
The consequence of that would be that when the particulars of demand are filed they relate back and become part of the original declaration. So that here is a case where the original declaration contained a count for money had and received, which was a proper count under which claim could be made for the proceeds of these bonds. Therefore, we think that the Court was right in holding that the defense of limitations must be pleaded with reference to the ■commencement of this suit, and not with reference to the *279 filing of this amendment, which is merely an amendment of a count originally filed, and not the introduction of a new cause of action.
This leads us to consider the strength of the defense of limitations. The plea then filed was that the action did not accrue within three years before the commencement of the suit; and the plaintiff answered, as I have already stated, first, that the action did accrue within three years; second, that the cause of action had been fraudulently concealed by the plaintiff, and was not discovered until within three years before the commencement of the suit. The third and fourth replications are substantially the same, and allege a revival of the liability by a new promise.
The first notice of this was a motion to compel the plaintiff to elect upon which replication he would stand, and to strike out the other three. That motion was overruled, but no exception was taken to the order of the Court at that stage of the case. Then a demurrer was filed for duplicity. At common law, as we all know, a man could not answer any plea by more than one replication. It was only by virtue of a statute that he was allowed to plead several pleás; but that statute only extended to the plea and not to the replication. Therefore, there would seem to be a technical error in allowing four replications to be filed to .the plea of the Statute of Limitations. The question, however, is: first, whether that'is properly before the Court; and next, whether it is error which would require the Court to reverse the judgment below.
It is to be observed that the United States Supreme Court has acted upon this question in several cases. It seems to be a hard rule, but still it has laid down the rule that when a party demurs to a pleading and the demurrer is overruled, if, instead of allowing the judgment to go upon that demurrer and taking the case upon appeal, he joins issue upon the pleading, he thereby waives the demurrer and it is not a *280 subject for review in the Court above. This was held, in Aurora vs. West, 7 Wall., 82; Watkins vs. U. S., 9 Wall., 762; Campbell vs. Wilcox, 10 Wall., 421; Stanton vs. Embry, 93 U. S., 548; and in Young vs. Martin, 8 Wall., 354.
In Young vs. Martin the Court says that, independent of certain other considerations, “ The ruling of the Court on this point would not be noticed,” for it appears that the plaintiffs, instead of relying upon the sufficiency of the alleged demurrer, filed a replication to the answer. They thus abandoned their demurrer and it ceased to be a part of the record.”
I should further observe that the rule which would exclude more than one replication is certainly not a rule in the interests of justice, if the plaintiff really had severa;! answers to the plea of the Statute of Limitations; and it is not, therefore, one which should be extended. There is also great force in what has been said in the argument for the plaintiff, to wit: that allowing these four replications to be considered by the jury did not admit any other evidence than would have gone to them under any one of the replications; in other words, that identically the same evidence was relied upon by the plaintiff in proof of every one of these replications, and it was the same evidence which he had used in proof of his substantive case in the beginning. For instance, the receipt of January 22, 1881, was relied upon as a new promise and a new acknowledgment of the liability; and the certificate contained in that receipt, that the bonds were in possession of the defendant and on deposit with ¡Riggs & Company, was relied upon as evidence of concealment; so that really no harm could be said to have been done to the defendant by allowing four replications to the plea, when the same identical proof tended to establish them all. However, the rule seems to be settled that the joinder in the pleadings afterwards was a waiver *281 of the demurrer; and therefore we do not think that we have a right to review here the question raised by the demurrer.
After the jury was sworn the defendant endeavored to raise the same question again by a motion to withdraw his rejoinder to .the plaintiff’s second, third and fourth replications, and that the plaintiff should be compelled to elect upon which replication he would stand. This was overruled, and it was excepted to. That was an application to amend the pleadings after the jury was sworn, and that was essentially an application that rests in the discretion of the Court, and is not the subject of review at all in this Court; so that by no possibility can the question involved in this objection to the four replications be considered by us as properly before us.
Before the jury were sworn the defendant filed separate demurrers to each of the second, third and fourth replications, and a joinder in issue as to the first replication. It is objected that the plaintiff has no right to reply to the plea of the Statute of Limitations that the cause of action was fraudulently concealed from him, and that he did not discover it until within three years before the commencement of the suit. It is sufficient for us to say, with reference to ^hat, that while there is a conflict of authorities among the States, the Supreme Court has sufficiently stated its opinion that in the federal courts, either at law or in equity, this replication is a valid one to the plea of the Statute of Limitations; that is to say, it holds it to be a good answer that the plaintiff did not bring his action sooner because the accruing of the cause of action had been concealed from him fraudulently by the defendant and therefore the statute ought not to run against him, except from the discovery of the wrong.
The third and fourth replications substantially set up an acknowledgment of an existing liability and a new promise *282 within three years, and the receipt of the defendant of January 22, 1881, in which he acknowledges himself accountable for the bonds, was relied upon in evidence; and then there was the parol evidence of the plaintiff that as late as July, 1881, he had promises from the defendant to return the bonds or pay the value. The question suggested in argument was, whether a new promise of that sort can be held to revive a promise implied by law from the receipt of the proceeds of sale after a tortious conversion of the property. As we all know, a party may waive the tort and sue upon an implied assumpsit; but the question is, would the new promise revive the promise so implied by law?
That question seems to be answered by the case of Hony vs. Hony, 1 Sim. & Stu. Ch., 560. That was a case in which a party had .converted a certain amount of timber more than six years before suit was brought against him, but within six years before suit was brought he had rendered an account of, it which wras imperfect, and the plaintiff filed his bill for a further accounting. Then the defendant relied upon the fact that his alleged conversion had been made more than six years before the suit was brought. But the Court said:
“ It is clear upon the authorities that the plaintiff might have elected to bring an action of assumpsit, and not tro-, ver, for money had and received by the defendant from the sales of timber, and that the render of the account, as alleged by the bill, would have been an acknowledgment by the defendant which, in the action of assumpsit would have taken the case out of the Statute of Limitations. The plaintiff does not in this bill impeach the sale of timber as improperly or improvidently made by the defendant; and although he prays an account of the value, it would be quite consistent with the case made by the bill that he should seek a decree on account of the produce of the sales as truly representing the value. ' I consider the bill here, *283 therefore, as analogous to an action of assumpsit, and that the alleged render of the account defeats the' plea of the Statute of Limitations'”
That is a case analogous to the present. Here, the alleged conversion took place in January, 1880, and in January, 1881, the defendant acknowledges himself accountable for the property; and' within the principle and meaning of that decision, it is a revival of the implied assumpsit growing out of the conversion in 1880.
This disposes of the subject of limitation, which was the main defense relied upon in this case. We see no reason to reverse the action,of the Court below for any error in that regard, the only error, we think, being, removed from the record by the waiver resulting from the joinder in the pleadings.
One other question remains. The defendant at the trial offered to show title in some party other than the plaintiff, and that these bonds really belonged to other persons. As we have said before, this was a case, in our judgment, of bailment, and it seemed to be conceded in argument that if it is á case of bailment, the bailee cannot dispute the title of his bailor, except under certain circumstances, such as, that the property was recovered from him by a better title, or that he had voluntarily surrendered 'it to one having a better title.
But here was a case where the defendant had appropriated the bonds to his own use and had received the value for them. They had never been delivered by him to anybody and had never been recovered from him by a better title.' This was sought to be met in the argument by saying that this was not a bailment, but that it was merely a sale of the bonds.
We do not take that view of it. But even suppose that to be true, would it make any difference? The defendant having sold the bonds and having had • the full benefit of them, what excuse could he make for not paying for them'? *284 The only one we can conceive would be that the true owner might sue him for the conversion of them to his own use, or that his vendee might sue him on an implied warranty. But that would. not apply to a case like this, because these bonds were coupon bonds, payable to bearer, and therefore were transferable by delivery; and if the defendant bought them, he acquired a good title, and if he sold them, he passed a perfect title to his vendee; and he could not be sued for conversion of them, nor could his vendee be disturbed in his title and thereby acquire a right of action against him on an implied warranty.
We think, therefore, that the Court below was right in excluding testimony to the effect that the bonds were owned by some person other than the plaintiff, and that upon the whole there is no ground to sustain the motion for a new trial on exceptions.

The motion is, therefore, overruled.